UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JUSTIN DUBIEL     Plaintiff

v.     Civil Action No. 3:18-cv-837-RGJ

CORRECT CARE SOLUTIONS, *ET AL*.     Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Justin Dubiel ("Plaintiff") brings this 42 U.S.C. § 1983 action against Correct Care Solutions, LLC ("CCS") and its employees, Jeff Ingram ("Ingram"), Aimee Mihalyou ("Mihalyou"), Rick Richards ("Richards"), and Dawn Patterson ("Patterson") (collectively, "Defendants"). [DE 8; DE 9]. Defendants moved to dismiss on behalf of Ingram, Mihalyou, Richards, and Patterson (the "Motion to Dismiss"). [DE 15]. Plaintiff moved to transfer under 28 U.S.C. § 1404(a) (the "Motion for Transfer"). [DE 26]. While the Motion to Dismiss was pending, Defendants moved for summary judgment. [DE 31]. Plaintiff then filed a Motion to Defer Consideration of Defendants' Motion for Summary Judgment (the "Motion to Defer Consideration"). [DE 37]. Briefing is complete, and the motions are ripe. [DE 28; DE 29; DE 30; DE 35; DE 37; DE 38; DE 39]. For the reasons below, the Court **GRANTS PLAINTIFF'S COUNSEL LEAVE TO RESPOND** to Defendants' Motion to Dismiss [DE 15], **DENIES** Plaintiffs' Motion For Transfer [DE 26], **ADMINISTRATIVELY REMANDS** Defendants' Motion for Summary Judgment [DE 31], and **DENIES AS MOOT** Plaintiff's Motion to Defer Consideration [DE 37].

# I.     BACKGROUND

Plaintiff is an inmate at Luther Luckett Correctional Complex (LLCC). [DE 8 at 41]. While incarcerated at LLCC, Plaintiff was diagnosed with the Hepatitis C virus ("HCV"). *Id.* at 45. Plaintiff's suit centers on the refusal of CCS and its employees to give him the "cure" for HCV. *Id.* Acting *pro se*, Plaintiff filed a Complaint in December, 2018 [DE 1], and an Amended Complaint in January, 2019, [DE 8].

After its 28 U.S.C. § 1915A review, the Court allowed "Plaintiff's Eighth Amendment claims of deliberate indifference to his serious medical needs to proceed against Defendants Correct Care Solutions and against Patterson, Richards, Ingram, and Mihalyou in their individual capacities for all relief and in their official capacities for injunctive relief only." [DE 9 at 73]. Plaintiff seeks $200,000 in monetary damages, $2,000,000 in punitive damages, and injunctive relief of the "direct-acting antiviral drug cure for hep. (sic) C." [DE 8 at 48].

In May 2019, Defendants filed the Motion to Dismiss. [DE 15].

In July 2019, Greg Belzley ("Belzley"), class counsel in *Woodcock v. Correct Care Sols., LLC,*, 3:16-CV-00096-GFVT (the "Class Action"), contacted Defendants about transferring Plaintiff's case from this Court to Judge Van Tatenhove's court in the Eastern District of Kentucky. [DE 29-1 at 164]. In *Woodcock*, Judge Van Tatenhove certified a class of "all inmates in Kentucky prisons who have been diagnosed, or will be diagnosed, with chronic hepatitis C virus (HCV) for purpose of injunctive relief." [DE 26 at 123]. Belzley asserts that Plaintiff is a member of the certified class. *Id.* ("This class definition obviously embraces Plaintiff and his own claims for injunctive relief against CCS").

In September 2019, Defendants confirmed with Belzley that they would not agree to transfer the case to the Eastern District of Kentucky. [DE 29-3 at 169].

Belzley then entered his appearance here [DE 25] and filed the Motion for Transfer [DE 26]. Defendants responded [DE 29] and Plaintiff replied [DE 35].

Plaintiff filed a *pro se* response [DE 28] objecting to the Motion to Dismiss. Plaintiff also asserted that he was receiving treatment for HCV. *Id.* at 154 ("Plaintiff states his (sic) is enlisted to Medical Treatment for a chronic disorder in which defendants refused to give him. Plaintiff asks this Court to consider the fact that now Plaintiff is receiving treatment for his condition and the only thing that has changed is he filed this action. Now for some reason, the Defendants treat him"). Defendants replied [DE 30].

Defendants moved for summary judgment [DE 31]. Rather than a substantive response, Plaintiff filed the Motion to Defer Consideration [DE 37]. Defendants responded [DE 38], and Plaintiff replied [DE 39].

## II. STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witness, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party has the burden of showing that transfer to another forum is proper. *See Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 652 n.7 (6th Cir. 2016); *see also Boiler Specialists, LLC v. Corrosion Monitoring Servs., Inc.*, No. 1:12-CV-47, 2012 WL 3060385, at *2 (W.D. Ky. July 26, 2012) (collecting cases). When deciding whether to transfer a case, the court first considers whether the action could have originally been filed in the transferee district. *Payment All. Int'l, Inc. v. Deaver*, No. 3:17-CV-693-TBR, 2018 WL 661491, at *5 (W.D. Ky. Feb. 1, 2018) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). If so, the court then considers "whether on balance, a transfer would serve 'the convenience of the

parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine. Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citing 28 U.S.C. § 1404(a)).[1]

"As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH America LLC*, 574 F.3d 315, 320 (2009).

### III. DISCUSSION

As discussed below in more detail, the Court will not transfer and consolidate this case with the Class Action. Nor will the Court, at this time, rule on Defendant's motions [DE 15; DE 31]. Plaintiff's counsel entered his appearance here [DE 25] two days before Plaintiff's *pro se* response to Defendant's Motion to Dismiss. As a matter of fairness, the Court will allow Plaintiff's counsel to file a supplemental response to Defendant's Motion to Dismiss [DE 15]. Once the Court has ruled on the Motion to Dismiss and, if necessary, the Court will then allow Plaintiff's counsel to respond to Defendant's Motion for Summary Judgment [DE 31].

**A. Change of Venue (28 U.S.C.A. § 1404)**

Plaintiff seeks to transfer and consolidate this case with the class action. Plaintiff argues for transfer because the class defined "embraces Plaintiff and his own claims for injunctive relief against CCS." [DE 26 at 123]. Plaintiff further contends that transfer would be in the "interests of justice," would satisfy many factors the Court considers, and would allow "Plaintiff's representation by competent class action counsel familiar with the particularities of HCV

---

[1] Courts within the Sixth Circuit have identified nine factors that the Court should consider in making this determination. These factors include 1) the convenience of witnesses; 2) the location of relevant documents and relative ease of access to sources of proof; 3) the convenience of the parties; 4) the locus of the operative facts; 5) the availability of process to compel the attendance of unwilling witnesses; 6) the relative means of the parties; 7) the forum's familiarity with the governing law; 8) the weight granted the plaintiff's choice of forum; and 9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Pharmerica Corp. v. Crestwood Care Ctr., L.P.*, No. 3:12-CV-00511-CRS, 2013 WL 5425247, at *1 (W.D. Ky. Sept. 26, 2013).

injunction litigation." *Id.* at 124. Defendants object, arguing that: 1) "multiple parties-defendants are involved who are not parties to this action"; 2) "fact and expert discovery has been completed"; and 3) "the dispositive motion deadline has expired." [DE 29 at 161].

**1. The claims against CCS, but not Ingram, Mihalyou, Richards, and Patterson, could have been filed in the Eastern District of Kentucky.**

"When determining whether an action could have been brought in a specific forum under § 1404, the Court only considers whether the federal venue laws are satisfied." *First Fin. Bank, Nat'l Ass'n v. Williams*, No. 5:19-CV-128-TBR, 2019 WL 4675392, at *2 (W.D. Ky. Sept. 25, 2019) (citing *Atlantic Marine*, 571 U.S. at 55). There is not a special venue statute for § 1983 civil rights actions. *Gamble v. Whitmer*, No. 3:12-cv-P481-H, 2012 WL 4460460, at *1 (W.D. Ky. Sept. 25, 2012). As a result, 28 U.S.C. § 1391(b) controls. Under § 1391(b), a party may bring a civil action in:

1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located,

2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

3) if there is no district in which an action may otherwise be brought in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

CCS, a corporation, is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts." 28 U.S.C.A. § 1391(d) (West); *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F.Supp.2d 1039, at 1048 (S.D.Ohio 2002) ("[I]n the case of a corporate defendant, the residence of the defendant incorporates the test for personal jurisdiction.

5

In other words, if a corporate defendant is subject to personal jurisdiction in a judicial district, it is deemed to reside there for purposes of venue"). CCS operates throughout the Commonwealth of Kentucky, including in the Eastern District of Kentucky. [DE 31 at 197 ("Correct Care Solutions, at the pertinent time, was under contract with the Commonwealth of Kentucky and Louisville Metro Department of Corrections to provide medical services to inmates housed at various penal institutions and jails throughout the state]. CCS is subject to personal jurisdiction in the Eastern District of Kentucky and is thus deemed to reside there for purposes of venue.[2] The Court therefore finds that Plaintiff could have sued CCS in the Eastern District of Kentucky.

Defendants Ingram, Mihalyou, Richards, and Patterson are natural persons and, for purposes of venue, are "deemed to reside in the judicial district in which they are domiciled." 28 U.S.C.A. § 1391(c)(1). Plaintiff has not proven that these defendants are domiciled in the Eastern District of Kentucky. *Boiler Specialists*, 2012 WL 3060385, at *2 ("[T]he moving party bears the burden of proving that transfer is proper"). Nor has Plaintiff proven that these defendants reside in Kentucky.[3] Finally, it is clear from the pleadings here, that the "events or omissions giving rise to the claim occurred" at the Luther Luckett Correctional Complex in the Western District of Kentucky. 28 U.S.C.A. § 1391(b)(2) ("A civil action may be brought in judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). Plaintiff has not proven that he could have sued Ingram, Mihalyou, Richards, and Patterson in the Eastern District of Kentucky. For that reason, the Court cannot make the finding that he could.

2. **Transferring the claims against CCS to the Eastern District of Kentucky would not promote "the interest of justice"**

---

[2] The Court's finding is reinforced because the class action against CCS is pending in the Eastern District.
[3] If these defendants did, in fact, reside in Kentucky, then the case could have been brought in the Eastern District of Kentucky because CCS resides there. *See* 28 U.S.C.A. § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located).

Turning to "whether on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice,'" the Court finds that transferring the claims against CCS is not in the "interest of justice" because Plaintiff is functionally no longer a member of the certified class of "all inmates in Kentucky prisons who have been diagnosed, or will be diagnosed, with chronic hepatitis C virus (HCV) for purpose of injunctive relief." The class seeks injunctive relief "against all Defendants requiring that they meet the standard of care in the diagnosis and treatment of HCV-infected inmates or, at a minimum, adopt *in toto* and comply with the FBOP Guidelines." [*Woodcock*, 3:16-cv-00096-GFVT-EBA, DE 126 at 1406]. Although Plaintiff was diagnosed with HCV, he has received direct-acting antiviral treatment and thus would no longer benefit from the relief sought by the class.[4] [DE 31-3 at 205 ("[Plaintiff] was started on a twelve-week course of antiviral therapy . . . and he completed that course of treatment on September 16, 2019. As of October 7, 2019, [Plaintiff's] lab results give every indication that he is clear of HCV")]. Because he has already received treatment, he is functionally no longer a member of the class.[5] The Court has considered the nine factors identified by the Sixth Circuit. *See Pharmerica*, 2013 WL 5425247, at *1. Many of them, on their face, support transfer. But based on the totality of the circumstances, transfer is improper because CCS is the only party involved in both this suit and the class action, and the only relief Plaintiff could obtain from CCS

---

[4] The Court is allowing Plaintiff's counsel to respond to Defendant's Motion to Dismiss. In the Motion to Dismiss, Defendants argue that Plaintiff's claim for injunctive relief is moot as he has since received direct-acting antivirals. [DE 30 at 173]. Without ruling on the issue, the Court notes that Defendants' argument is compelling because Plaintiff's request for injunctive relief was to receive direct-acting antivirals. [DE 8 at 48 ("[G]rant injunctive relief by direct-acting antiviral drug cure for hep. C"]. The likely mootness and dismissal of his claim for injunctive relief is an additional reason for the Court not to transfer and consolidate this case with the class action where the only relief available to the class is injunctive relief.
[5] In his Order certifying the class, Judge Van Tatenhove addressed this issue: "If, in fact, [named plaintiffs] no longer are infected with HCV, neither of them would be included as class members for the proposed class of 'all HCV-infected inmates in Kentucky prisons for the purpose of injunctive relief.'" *Woodcock v. Correct Care Sols.*, LLC, No. 3:16-CV-00096-GFVT, 2019 WL 3068447, at *7 (E.D. Ky. July 12, 2019).

in the class action is what he has already received. When there can be no relief, there can be no justice. As a result, the Court will not transfer the case against CCS to the Eastern District of Kentucky[6] because doing so will not "promote the interest of justice."

## IV. CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT HEREBY ORDERS AS FOLLOWS**:

(1) Plaintiff's counsel is **GRANTED LEAVE TO RESPOND** to Defendants' Motion to Dismiss [DE 15]. Plaintiff's counsel shall have 30 days from the filing of this Order to respond, and Defendants shall have 15 days to reply.

(2) Plaintiff's Motion for Transfer [DE 26] is **DENIED**.

(3) Defendants' Motion for Summary Judgment [DE 31] is **ADMINISTRATIVELY REMANDED.**

(4) Plaintiff's Motion to Defer Consideration [DE 37] is **DENIED AS MOOT**.

Copies to: Counsel of record

---

[6] The Court also notes that severing this action to transfer the claim against CCS, but not Ingram, Mihalyou, Richards, and Patterson "would require the case to be litigated in two forums and work a hardship against the plaintiff so as to counter-balance the other factors that must be considered when evaluating transfer motions." *Bennett v. Am. Online, Inc.*, 471 F. Supp. 2d 814, 821 (E.D. Mich. 2007).